UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALILA BARAJAS,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:17-cv-01551-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

**INTRODUCTION**

Plaintiff Dalila Barajas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 6, 8.)

1

the record and is not based on proper legal standards. Accordingly, the Court will direct that the Commissioner's determination be REVERSED and REMANDED for further proceedings.

## **FACTS AND PRIOR PROCEEDINGS**

On August 22, 2013, Plaintiff protectively filed an application for a period of disability and DBI. AR 207-213.[2] Plaintiff also protectively filed an application for SSI on August 22, 2013. AR 214-219. Plaintiff alleged disability beginning April 20, 2012, in both applications. AR 207, 214. Plaintiff's applications were denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). AR 132-150. ALJ Sharon Madsen held a hearing on June 21, 2016, and issued an order denying benefits on July 26, 2016. AR 17-67. This appeal followed.

### **Relevant Hearing Testimony**

The ALJ held a hearing on July 26, 2016, in San Bernadino, California. AR 35-67. Plaintiff appeared and was represented by her attorney, Melissa Proudian. AR 17, 35. Impartial Vocational Expert Jose L. Chaparro also appeared. *Id*.

In response to questioning by the ALJ, Plaintiff testified that she is 5 feet 2 inches tall and 260 pounds. AR 39. She is separated and has two kids, aged eighteen and eleven-and-a-half, and her youngest child lives with her. *Id.* Plaintiff can do some household chores, such as preparing simple meals, washing dishes, sweeping, and mopping with use of a chair with wheels. AR 40-41. She does not engage in social activities. AR 40.

Plaintiff's testimony regarding her typical daily activities differentiated between "good" and "bad" days. AR 41-42. On "good" days, Plaintiff gets up at 6:30 a.m. to wake her daughter and take her to school. AR 41. Plaintiff returns home, takes her medication, and prepares a simple meal if she is hungry, although she frequently is not hungry. *Id.* She then performs light chores such as washing dishes, sweeping, or mopping with the assistance of a chair on wheels. *Id.* By 12 p.m., Plaintiff must take a nap due to pain and fatigue. *Id.* Plaintiff awakes at 1:45 p.m. to pick up her daughter from school and prepares her a light snack. *Id.* Plaintiff then offers to help her daughter with her homework and, if

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

nothing else is needed, asks her daughter to wake her if she needs anything and then returns to sleep. *Id.*

On "bad" days, Plaintiff takes her daughter to school, returns home, and sleeps from approximately 8 a.m. through 1:45 p.m. AR 42. Plaintiff picks her daughter up from school and then asks her mother to take care of her daughter while Plaintiff sleeps. *Id.* Plaintiff testified that she experiences at least three flare ups of "bad" days per month that last anywhere from two to seven days at a time. AR 47. Stress and escalated activity levels can increase the duration or intensity of these flare ups. AR 47-48.

When asked about her prior work history, Plaintiff testified that she worked for King's County Sheriff's office from 2007 through 2012, initially performing secretarial work and then ultimately assisting with Live Scan fingerprinting. AR 43. From 2006 to 2007, Plaintiff was employed full-time as a medical records technician. AR 44.

With respect to her mental impairments, Plaintiff testified that she suffers from depression and is sad about her life. AR 51. Plaintiff typically remains in her home and does not like going out because she becomes nervous and panicky around other people. AR 51-52. Plaintiff also has difficulty concentrating on tasks. AR 53. Plaintiff takes Venlafaxine, Abilify, and Trazodone, but testified that they do not help her. AR 52. Plaintiff sees a therapist every three to six weeks. AR 52-53.

In response to questioning by her attorney, Plaintiff testified that she can pay attention to a task for approximately fifteen to twenty minutes before requiring a break of forty-five minutes to an hour. AR 53-54. On average, she has maybe three to four "good" days per week but cannot anticipate when they will come and how long they will last. AR 54-55. In addition to stress, Plaintiff's "bad" days are triggered by increased activities, lack of rest, and change of weather. AR 56. Even on her "good" days, Plaintiff requires breaks of thirty minutes to an hour after five to ten minutes of performing activities such as preparing simple meals and conducting light housework. AR 55-56. Plaintiff testified that her energy levels are generally very low, she is constantly in pain, and she experiences drowsiness as a side effect of her medication. AR 57-58.

Plaintiff further testified that she suffers from panic attacks when she is around crowds of people. AR 58. If she needs to go to the store, she gets there early before anyone else arrives. *Id.* When she

takes her daughter to school, she arrives five to ten minutes early while there are fewer cars. AR 58-59. Plaintiff's last panic attack was approximately one month prior to the hearing while she was at the mall. AR 59.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE"), Jose L. Chaparro. The VE testified that Plaintiff's work history included administrative clerk, fingerprint clerk, and medical record clerk. AR 61. The ALJ also asked the VE hypothetical questions. AR 61-63. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education, and work background as Plaintiff. AR 61. This person could lift and carry 20 pounds occasionally, 10 pounds frequently, sit, stand, and walk six to eight hours with occasional stopping, crouching, crawling, climbing and kneeling, frequent balance, simple routine tasks, and occasional public contact. AR 61-62. The VE testified that Plaintiff's past work was not available but there were other jobs available, including light unskilled work as a housekeeping cleaner, toe housing machine tender, or router. AR 62. For the second hypothetical, the ALJ asked if the person in the first hypothetical would be able to perform any jobs if he or she were able to stand and walk for two hours and sit for six to eight hours. AR 62-63. The VE testified that there would be no past work available, but there were unskilled sedentary jobs available as a microfilming document preparer, stuffer, or table worker. AR 62. For the third hypothetical, the ALJ asked if the person in the second hypothetical would be able to perform any jobs if that person needed an additional two to four breaks of thirty (30) minutes each per day. AR 63. The VE testified that there would be no work available. *Id.*

Finally, Plaintiff's attorney asked the VE hypothetical questions. AR 63-64. Plaintiff's attorney asked if the result would change if the person in the ALJ's first hypothetical would be off task fifteen (15) percent of the time. AR 64. The VE testified that there would be no work available. Plaintiff's attorney then asked if the result would change if the person in the ALJ's second hypothetical would be unable to interact and relate approximately with co-workers and the general public ninety (90) percent of the time. AR 64. The VE again testified there would be no work available. *Id.* Plaintiff's attorney then asked if the result would change if the person in the ALJ's second hypothetical would be unable to maintain regular attendance in the work place and perform work activity on a consistent basis ninety (90) percent of the time. *Id.* The VE again testified that there would be no work available. *Id.* Finally,

4

Plaintiff's attorney asked if the result would change if the person in the ALJ's second hypothetical would miss two or more days per month. *Id.* The VE again testified that there would be no work available. *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 17-29. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since April 20, 2012, her alleged onset date. AR 19. Further, the ALJ identified lumbar degenerative disc disease, fibromyalgia, morbid obesity, cervical degenerative disc disease, major depressive disorder, generalized anxiety disorder, and panic disorder as severe impairments. AR 19-20. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 20-21. Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work. AR 21-26. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 27. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 28.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred in evaluating the opinions of consultative psychological examiner Robert Marselle, Psy. D., RN, and Plaintiff's treating psychiatrist, Romeo Mariano, M.D. (Doc. No. 19 at 29-33.) Plaintiff additionally asserts that the ALJ's errors warrant a direct award of benefits without remand for further proceedings. (Doc. No. 19 at 33-35.)

**1. Physician Opinions**

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821,

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

830 (9th Cir. 1995). Generally, the opinions of treating physicians are entitled to the most weight, while the opinions of examining physicians are entitled to more weight than the opinions of nonexamining physicians. *Id.* This is because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990). Where the opinion of an examining or treating physician is uncontroverted, the ALJ must provide clear and convincing reasons for rejecting that opinion. *Lester*, 81 F.3d at 830-31. Even if contradicted by another doctor, the opinion of an examining or treating doctor can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

<u>Dr. Marselle</u>

On January 30, 2014, Dr. Marselle completed a Consultative Psychological Evaluation Report. AR 443-453. Dr. Marselle opined that Plaintiff had no impairments in her ability to carry out simple one- or two-step job instructions or accept instructions from supervisors. AR 453. Dr. Marselle further opined that Plaintiff had moderate impairments in her ability to carry out detailed and complex instructions, associate with day-to-day work activities including attendance and safety, and perform work activities without special or additional supervision, and marked impairments in her ability to relate and interact with co-workers and the public, maintain concentration and attention, and maintain regular attendance in the workplace and perform work activities on a consistent basis. *Id.*

In assessing the opinion of Dr. Marselle, the ALJ stated as follows:

> Dr. Marselle opined that the claimant demonstrated mild to marked impairment in work-related mental functions. I give limited weight to the limitations that Dr. Marselle assessed. The terms "mild," moderate," and "marked" to describe impairment are vague and Dr. Marselle did not offer any guidance on interpreting them.

AR 25.

Here, Dr. Marselle's opinion appears to have been contradicted by the non-examining state agency physician, E. Aquino-Caro, M.D. According to Dr. Aquino-Caro's review of the records dated

7

February 28, 2014, Plaintiff's ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision was not significantly limited and her ability to maintain attention and concentration for extended periods of time and to appropriately interact with the general public was only moderately limited. AR 78-80, 92-94. On June 19, 2014, a second non-examining state agency physician, E. Murillo, M.D., affirmed Dr. Aquino-Caro's assessment. AR 110-112, 125-127. Given that the opinion of the state agency physicians contradicted Dr. Marselle's opinion regarding the severity of Plaintiff's limitations, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Marselle's opinion.

Plaintiff argues that the sole reason the ALJ identified in discounting Dr. Marselle's opinion regarding Plaintiff's limitations, *i.e.* that the terms "mild," "moderate," and "marked," were not defined, does not meet the standard of specific and legitimate reasons supported by substantial evidence in the record. (Doc. Nos. 19 at 31, 27 at 3.) Notably, Dr. Marselle does not use the term "mild" to describe Plaintiff's limitations in his report. Moreover, with respect to Dr. Marselle's use of the terms "moderate" and "marked," an ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Id.* Once it is triggered, the ALJ must "conduct an appropriate inquiry," which can include "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* Here, the ALJ expressly found the terms used in Dr. Marselle's report to describe impairment to be "vague." AR 25. There is no indication on the record that the ALJ made any efforts to satisfy her duty of conducting an appropriate inquiry to resolve the ambiguity which allegedly resulted from Dr. Marselle's use of these terms. Failure to do so constitutes reversible error. *Tonapetyan,* 242 F.3d at 1151; *see also Vasquez v. Berryhill*, 2017 WL 2633413 at *6 (E.D. Cal. June 19, 2017).

The Commissioner argues that any error is harmless because the limitations assessed by Dr. Marselle are consistent with the ALJ's RFC finding for simple routine work and occasional contact with

the public. (Doc. No. 26 at 8.) An RFC is what a claimant "can still do despite [his or her] limitations," and it should include all the limiting effects of an impairment. 20 C.F.R. §§ 404.1545(a)(e) and 416.945(a)(e). Here, the ALJ's mental RFC states that Plaintiff can perform simple, routine tasks and tolerate occasional public contact. AR 21. Dr. Marselle found no impairment in Plaintiff's ability to understand, remember, and carry out simple one-or-two step job instructions or to accept instructions from supervisors; moderate impairment in her ability to follow detailed and complex instructions, associate with day-to-day work activity including attendance and safety, or to perform work activities without special or additional supervision; and marked impairment in her ability to relate and interact with co-workers and the public, maintain concentration and attention, persistence, and pace, or to maintain regular attendance in the workplace and perform work activities on a consistent basis. AR 453. The RFC does not appear to encompass any of the moderate and marked limitations Dr. Marselle identified, and the ALJ did not properly reject this opinion. Furthermore, the ALJ found the terminology used by Dr. Marselle to be ambiguous, making it difficult to determine whether the ALJ incorporated any of Dr. Marselle's limitations in to the RFC at all. The Court accordingly cannot find that the ALJ's error was "inconsequential to the ultimate nondisability determination" and therefore harmless. *See Tommasetti*, 533 F.3d at 1038.

Dr. Mariano

On June 14, 2016, Dr. Mariano completed a Mental Residual Functional Capacity Questionnaire. AR 859-861. Dr. Mariano opined that Plaintiff had "Category IV" limitations in every identified area, including the ability to remember locations and work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, be punctual and within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple instructions and respond appropriately to

9

criticisms from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. AR 860. A "Category IV" limitation was defined as "precludes performance for 15% or more of an 8-hour work day." AR 859. In addition to evaluating Plaintiff's abilities, Dr. Mariano reported that Plaintiff likely would be absent from work and/or unable to complete an 8-hour work day five days or more per month. *Id.*

In assessing the opinion of Dr. Mariano, the ALJ stated as follows:

> I give minimal weight to the Mental Residual Functional Capacity Questionnaire that Romeo Mariano, M.D. completed in June 2016 (Exhibit 16F), indicating that the claimant was extremely limited in performing various mental abilities typically required in the performance of unskilled work, and was unable to perform these tasks for 15 percent of [sic] more of an eight-hour day. This checklist-style form appears to have been completed as an accommodation to the claimant in her pursuit of disability benefits, and includes only conclusions regarding functional limitations without meaningful rationale for those conclusions. The responses on the check-box form are at odds with Dr. Mariano's treatment notes that consistently indicated that the claimant continued to improve with treatment. Mental status examinations consistently noted a euthymic mood and friendly demeanor (Exhibit 5F). Dr. Mariano also indicated that he saw the claimant for routine follow up every six to 12 weeks, which is consistent with generally stable symptomology.

AR 25-26.

Here, Dr. Mariano's opinion was contradicted by the non-examining state agency physicians Dr. Aquino-Caro and Dr. Murillo, who found moderate limitations in Plaintiff's ability to understand and remember very short and simple instructions, carry out detailed instructions, maintain concentration for extended periods, and interact appropriately with the general public, and no significant limitations in all remaining areas of the mental residual functional capacity assessment. AR 77-79, 92-94, 110-112, 125-127. Dr. Mariano's opinion additionally appears to have been contradicted by Dr. Marselle, who found no impairments in Plaintiff's ability to carry out simple one- or two-step job instructions or accept instructions from supervisors and moderate impairments in her ability to carry out detailed and complex instructions, associate with day-to-day work activities including attendance and safety, and perform work activities without special or additional supervision. AR 453. As a result, the ALJ was required to

provide specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Mariano's opinion.

Plaintiff first argues that the ALJ erred in rejecting Dr. Mariano's opinion because it "appears to have been completed as an accommodation to the claimant in her pursuit of disability benefits." AR 26. The Court agrees. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester,* 81 F.3d at 832. It is improper to "assume that doctors routinely lie in order to help their patients collect disability benefits." *Id.* While evidence of actual improprieties may be relevant and admissible, the ALJ does not cite to any such evidence in support of her conclusion and the Court has found none in the record. *See id.* Thus, the ALJ erred in rejecting Dr. Mariano's opinion on the basis that he appeared to be accommodating Plaintiff in her pursuit of disability benefits.

Second, Plaintiff argues that the ALJ improperly rejected Dr. Mariano's opinion as inconsistent with his treatment notes which "consistently indicate that the claimant continued to improve with treatment." AR 26. The ALJ further reasoned that Dr. Mariano's "[m]ental status examinations consistently noted a euthymic mood and friendly demeanor[.]" *Id.* An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including his own treatment notes. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Tommasetti*, 533 F.3d 1035, 1041 ("incongruity" between doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion). Here, however, the ALJ's characterization that Dr. Mariano's treatment records were inconsistent with his opinion is based upon an inadequate discussion of those treatment records. As the Ninth Circuit has explained, symptoms of mental impairments "wax and wane in the course of treatment." *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to rely on "a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and

depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace.")).

Dr. Mariano's treatment notes state that Plaintiff experienced "moderate" improvement overall on November 10, 2015, and June 9, 2015, and "mild" improvement overall on August 25, 2015, and February 11, 2015. AR 786, 802, 810, 823. Dr. Mariano nonetheless regularly notes that Plaintiff's prognosis is poor, chronic, and severe. AR 786-787, 803, 811. In Dr. Mariano's most recent treatment notes, Plaintiff's global assessment of functioning is rated at a 50, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." AR 785; *see also* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) (4th ed. 2000). Dr. Mariano further consistently assessed Plaintiff as "markedly limited" in each of the mental abilities and aptitudes needed to work, with "markedly limited" defined as "unable to meet competitive standards, [n]o useful ability to function[.]" AR 787-788, 803, 811-812. Moreover, the ALJ's finding that Dr. Mariano "consistently noted a euthymic mood and friendly demeanor" is inaccurate, as Dr. Mariano's treatment notes indicate that Plaintiff's mood was anxious, depressed, sad, and/or highly stressed in all but one of her sessions. AR 767, 782, 807, 823.

The ALJ's conclusion that Plaintiff was not disabled because the record showed that Plaintiff continued to improve with treatment is based upon isolated favorable portions of the record. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-1201 (9th Cir. 2008) ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."). Further, while Plaintiff may have experienced some "mild" and "moderate" improvement overall, there is nothing in Dr. Mariano's treatment notes indicating that her condition had stablized or the possibility of relapse had been eradicated. By themselves, notations indicating that a claimant is doing well or is stable do not contradict a treating physician's opinion of a claimant's

functional limitations. *See Moriel v. Berryhill*, No. SA CV 17-2215-PLA, 2018 WL 6435325, at *9 (C.D. Cal. Dec. 7, 2018); *Perez v. Astrue*, No 1L08cv0463 BAK, 2009 WL 3011647, at *13 (E.D. Cal. Sept. 17, 2009) (noting that "fairly stable" and "doing well" are relative terms). Thus, the ALJ's finding that Dr. Mariano's treatment notes consistently indicated improvement and were therefore inconsistent with his opinion regarding the degree of Plaintiff's limitations was in error and lacked the support of substantial evidence.

Third, Plaintiff argues that the ALJ erred in finding that Dr. Mariano's opinion was entitled to minimal weight because he saw the claimant for "routine" follow up every six to twelve weeks, "which is consistent with generally stable symptomology." AR 26. Frequency of examination is one factor that an ALJ may consider in determining how much weight to afford a treating physician's medical opinion. *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014). However, the ALJ's conclusion here that the frequency of Plaintiff's visits with Dr. Mariano was "routine" and "consistent with generally stable symptomology" amounted to an independent medical finding without the support of an underlying medical opinion. *See Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" (*quoting Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)); *Banks v. Barnhart,* 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (An ALJ "must not succumb to the temptation to play doctor and make his own independent medical findings" (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Moreover, an ALJ "'must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment' including inability to pay, whether '[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely,' and whether medication may relieve symptoms." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoting S.S.R. 96-7p)). There is no indication that any such explanations were considered here. Thus, the ALJ's finding was in error.

Finally, as the Commissioner notes, the ALJ identified a fourth reason for affording minimal weight to Dr. Mariano's opinion. The ALJ found that Dr. Mariano's opinion was entitled to little weight

13

because it "includes only conclusions regarding functional limitations without meaningful rationale for those conclusions." AR 26. This finding is supported by substantial evidence on the record. An ALJ may properly reject physicians' opinions that brief, conclusory, and unsubstantiated by relevant medical documentation. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted); *Meanel v. Apftel*, 172 F.3d 1111, 1114 (9th Cir. 1999). This includes "check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation omitted). Here, Dr. Mariano did not provide any comments or other explanations which would substantiate his opinion that Plaintiff was precluded from performing each of the twenty (20) mental abilities identified in his report for 15%, or 72 minutes, or more of an 8-hour work day. AR 859-860. The ALJ's finding in this regard is therefore supported by substantial evidence and does not constitute legal error.

Had the conclusory and unsupported nature of Dr. Mariano's report been the only reason given, it would have been sufficient to support the ALJ's finding that Dr. Mariano's opinion was entitled to minimal weight. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Several Ninth Circuit cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle,* 533 F.3d at 1162–63; *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195–97 (9th Cir.2004). An error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Batson,* 359 F.3d at 1197; *see also Carmickle,* 533 F.3d at 1162. Although the ALJ committed error in her findings regarding Dr. Mariano's opinion, her ultimate conclusion that it was entitled to minimal weight remains supported by substantial evidence because Dr. Mariano's assessment of Plaintiff's functional limitations was brief, conclusory, and unsubstantiated by relevant medical documentation.

**2.    Remand is Required**

The Court has considered Plaintiff's request to award benefits rather than remand the case for additional proceedings but finds remand more appropriate. The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v.*

*Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison*, 759 F.3d at 1020. Here, the ALJ failed to properly consider Dr. Marselle's opinion and the circumstances of this case indicate that there are outstanding issues regarding the medical evidence that must be resolved before a final determination can be made. Further administrative review may remedy the ALJ's errors and thus remand is appropriate. *Ghanim*, 763 F.3d at 1166 (finding remand to Commissioner for further proceedings appropriate where ALJ's reasons for discounting the opinions of claimant's treating providers and discrediting claimant's testimony were not supported by substantial evidence); *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Moreover, even if the Court were to credit Dr. Marselle's opinion as true, this opinion would still conflict with the findings of other physicians. The resolution of conflicting medical evidence is a determination solely for the ALJ. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citations omitted); *see also Tommasetti*, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *See Garrison*, 759 F.3d at 1020.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is REVERSED and the case REMANDED to the ALJ for further proceedings. On remand, the ALJ will reweigh the medical evidence and address the deficiencies identified by the Court. If necessary, the Commissioner may hold further hearings and receive additional evidence.

Accordingly, the Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Dalila Barajas and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **February 26, 2019**   /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE